USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/8/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
VINCENT SOTO,

            Plaintiff,

      -v.-

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

14-CV-4723 (GBD) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable George B. Daniels, United States District Judge:**

*Pro se* plaintiff Vincent Soto seeks judicial review of a final determination by the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner has moved for an order reversing the Commissioner's decision and remanding Soto's case to the Social Security Administration ("SSA") for further administrative proceedings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, to which Soto submitted no opposition. For the reasons discussed below, I recommend that the motion be granted.

## I. BACKGROUND

### A. Procedural History

Soto filed applications for DIB and SSI on October 25, 2011. Administrative Record ("R.") at 60-65, 66-74, 101.[1] Soto claimed disability beginning on November 8, 2008 due to

---

[1] The administrative record consists of one docket entry with seven attached supplemental documents. (Dkt. Nos. 19 to 19-7). For clarity and consistency, citations to the record will refer to the pagination which runs sequentially throughout the various entries and is marked in bold in the lower right-hand corner.

Human Immunodeficiency Virus ("HIV"). *Id.* at 60, 66.[2] The SSA denied both of his applications on December 15, 2011. *Id.* at 23-30. On February 14, 2012, Soto filed a request for a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 31-33. Appearing without an attorney or non-legal representative, Soto testified at a hearing held before ALJ Sean Walsh on January 23, 2013. *Id.* at 17-22. The ALJ found that Soto was not disabled and denied his claims in a written decision dated February 8, 2013. *Id.* at 6-14. The ALJ's determination became the Commissioner's final decision when the SSA Appeals Council denied Soto's request for review on May 28, 2014. *Id.* at 1-3.

Soto timely commenced the current action on June 9, 2014, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). *See* Complaint ("Compl.") (Dkt. No. 2). On February 18, 2015, the Commissioner filed her Answer (Dkt. No. 18) and moved for an order reversing the Commissioner's final decision and remanding the case for further administrative proceedings. *See* Notice of Motion to Remand (Dkt. No. 21); Memorandum of Law in Support of Defendant's Motion to Remand ("Def. Mem.") (Dkt. No. 22).[3] Soto has not submitted any response in opposition to the Commissioner's motion.

---

[2] Soto's DIB and SSI applications did not specify what disability he was claiming; however, the Social Security Administration's "Disability Determination and Transmittal" denying his applications describe his primary diagnosis as "Asymptomatic HIV Infection." R. at 23, 24.

[3] After the motion was filed, the Court directed the Commissioner to discuss with Soto whether he would agree to stipulate to a remand. (Dkt. No. 23). On March 6, 2015, the Commissioner advised the Court that Soto had not responded to the Commissioner's offer to stipulate to a remand. (Dkt. No. 24).

2

**B. The Administrative Record**

**1. Soto's Background**

Soto was born on February 26, 1963, and was 45 years old on the onset date of his alleged disability. R. at 60, 66; *see id.* 13. Soto lives in the Bronx, New York, has a GED and an Associate's Degree in Culinary Arts from Monroe College. *Id.* at 20, 114. He is married to Felicia Placencia. *Id.* at 61, 104. Between 1994 and 2008, Soto worked at various times as a boiler delivery person, forklift operator, packing clerk, shipping clerk, and performed other types of labor and maintenance work. *Id.* at 89-99. He stopped working as a boiler delivery person in November 8, 2008 because he was "laid off." *Id.* at 105. At the time of the hearing in January 2013, Soto was working full-time as a shoe salesman. *Id.* at 19-20; *see id.* at 13.

Soto was diagnosed as HIV positive in 2002 and takes antiviral medications to control the disease. *Id.* at 21, 139, 141, 146. In his submissions to the SSA, Soto indicated that his daily activities include watching television, going to school, and doing activities at home. *Id.* at 112. He is able to prepare his own meals and attend to his personal needs without assistance. *Id.* at 112-15. Soto also reported that he regularly spends time with friends and relatives, walks for approximately one hour each day, and can do "mostly everything" he could do before the onset of his illness. *Id.* at 112, 115-17. Nevertheless, Soto indicated that his illness causes him to rest more often. *Id.* at 114. In addition, he cannot stand longer than 30 minutes due to foot pain, cannot sit for a long period of time due to discomfort, and runs out of breath if he attempts to reach for an object that is high up. *Id.* at 116-17.

**2. Medical Evidence**

The medical evidence consists of records documenting three visits to the Comprehensive Care Center of Bronx-Lebanon Hospital in July, August, and October 2011 respectively, and

3

results of laboratory tests performed in 2009. *Id.* at 144-51, 152-55. The hospital records indicate that, between July and October 2011, Soto appeared to be responding well to his HIV medication and was asymptomatic. *Id.* at 144-51. The administrative record notes that Soto had another outpatient visit at Bronx-Lebanon Hospital Center in February 2012, during which a blood test unrelated to HIV was performed, although no hospital record of this visit or of the blood test results are included in the SSA record. *Id.* at 123-26. Soto also reported to the SSA that he saw Dr. Anupama Menon at Bronx-Lebanon Hospital Center on November 26, 2012, who told Soto that he was "stable medically as long as he takes his medications;" however, Dr. Menon's treatment notes are not in the SSA record. *Id.* at 139. Soto did not undergo a consultative medical examination in relation to his DIB and SSI applications.

### 3. Hearing Before the ALJ

ALJ Walsh held a hearing on January 23, 2013 to assess Soto's eligibility for DIB and SSI. *Id.* at 17-22. Soto appeared at the hearing without an attorney or other representative. *Id.* Although prior to the hearing the SSA sent Soto notices advising him of his right to legal representation, *id.* at 34-41, 42-49, the ALJ commenced the hearing without asking Soto whether he was aware of his right to representation, whether he wanted additional time to secure legal or other representation, or whether he wanted to proceed with the hearing without representation. *Id.* at 19. During the brief proceeding, the ALJ elicited testimony from Soto about his work history, including his current job as a shoe salesman. *Id.* at 20. Soto testified that he worked 40 hours per week although his schedule was subject to change depending on business needs. *Id.* As to his medical condition, Soto testified that he was diagnosed with HIV "right after 2000," had not been hospitalized since his diagnosis, took medication regularly, and was doing "fine," according to his doctor. *Id.* at 21. Soto stated that he would be taking HIV medication for the

rest of his life. *Id.* When the ALJ inquired whether he had any other illnesses, Soto responded that he suffered from hepatitis many years ago but recovered from the disease after taking interferon. *Id.* The ALJ then concluded the proceeding.

### 4. The ALJ Decision

In a decision dated February 8, 2013, the ALJ determined that Soto was not disabled as defined by the Social Security Act and applicable regulations, and therefore denied Soto's claims for DIB and SSI. *Id.* at 9-14. The ALJ made findings as to Soto's impairment,[4] Soto's residual functional capacity, and the existence of jobs in the national economy that Soto was capable of performing. Soto's treatment records suggested that his HIV condition was asymptomatic and, although he alleged some limitations to his exertional abilities, "he [was] able to attend to activities of daily living and take walks." *Id.* at 13. Therefore, Soto's statements concerning the intensity, persistence and limiting effects of his symptoms were "not entirely credible." *Id.* Soto had worked on and off since the alleged onset date of his disability, November 8, 2008, and "stopped working due to a lack of available work and not because of his medical condition." *Id.* Furthermore, Soto testified that he was currently working full-time as a shoe salesman. *Id.*

Based on these facts, the ALJ found that, although Soto was unable to perform any past relevant work, which appeared to involve exertional abilities that exceeded a light residual functional capacity, he was "capable of light exertional work activity." *Id.* Considering Soto's residual functional capacity in conjunction with the SSA's Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpart P, Appendix 2, Rule 202.21, the ALJ found that jobs existed in significant

---

[4] The ALJ determined that Soto's impairment of being HIV positive was severe but did not meet or was medically equal to the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. R. at 11.

numbers in the national economy that Soto could perform, directing the conclusion that Soto was not disabled. *Id.* at 13-14.

## II. DISCUSSION

The Commissioner seeks remand under sentence four of 42 U.S.C. § 405(g), which provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand to the Commissioner is appropriate "when there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rivera v. Barnhart*, 423 F. Supp. 2d 271, 277 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).

### A. Duty to Develop the Record

It is well-settled that the ALJ has an affirmative duty to develop the record in a disability benefits proceeding and that remand is appropriate where this duty is not discharged. *See, e.g., Moran v. Astrue*, 569 F.3d 108, 112, 114-15 (2d Cir. 2009) ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision."); *Rosa v. Callahan*, 168 F.3d 72, 79, 83 (2d Cir. 1999) (remand appropriate where ALJ, *inter alia*, failed to obtain adequate information from treating physician and to seek potentially relevant information from other doctors and treatment facilities); *Rodriguez v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.") (citation omitted).

The non-adversarial nature of a Social Security hearing requires the ALJ "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530

6

U.S. 103, 110-11 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)). Specifically, under the applicable regulations, the ALJ is required to "develop a complete medical record before making a disability determination." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. § 404.1512(d)-(f)); *see* 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.912(d). This responsibility "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Pena v. Astrue*, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citations omitted).

When the claimant is unrepresented, the ALJ has a "heightened duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (quoting *Echevarria v. Sec'y of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *accord Moran*, 569 F.3d at 113. Therefore, a reviewing court must determine whether the ALJ "adequately protect[ed] a *pro se* claimant's rights 'by ensuring that all of the relevant facts [are] sufficiently developed and considered.'" *Cruz*, 912 F.2d at 11 (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)).

The Commissioner concedes that the ALJ did not fully develop the medical record concerning Soto's HIV condition. Def. Mem. at 3. The medical evidence consisted only of records documenting three visits to the Comprehensive Care Center of Bronx-Lebanon Hospital in 2011 and the results of laboratory tests performed in 2009. R. at 144-51, 152-55. The ALJ did not ask Soto whether he received medical treatment from any other sources. Nor did the ALJ attempt to obtain medical records of Soto's outpatient visits at Bronx-Lebanon Hospital Center in February and November 2012, which are mentioned in the SSA record. *Id.* at 123-26, 139.

The ALJ also did not inquire as to whether Soto saw a treating physician regularly, attempt to obtain medical expert testimony, or request a consultative medical examination, which could have supplemented what was otherwise a meager medical record.

In sum, I find that the ALJ failed to fulfill his duty to properly develop the record, particularly in light of the fact that Soto was unrepresented at the proceeding. However, because there is evidence in the record tending to support a finding of non-disability, the Court cannot conclude as a matter of law that Soto is entitled to benefits. *See, e.g., Nunez v. Astrue*, No. 07-CV-11075 (FM), 2009 WL 857616, at *7 (S.D.N.Y. Mar. 27, 2009). Therefore, I recommend that the case be remanded to the Commissioner for further proceedings. *See, e.g., Ramirez v. Astrue*, No. 12-CV-2694 (GBD) (AJP), 2013 WL 362775, at *2 (S.D.N.Y. Jan. 31, 2013) (granting Commissioner's motion to remand because ALJ failed to fully develop medical record) *adopted*, 2013 WL 594217 (S.D.N.Y. Feb. 15, 2013); *Kercado ex rel. J.T. v. Astrue*, No. 08-CV-478 (GWG), 2008 WL 5093381, at *2 (S.D.N.Y. Dec. 3, 2008) (same); *Woodhouse v. Astrue*, No. 07-CV-7193 (GBD) (HBP), 2009 WL 2575892, at *2, 4 (S.D.N.Y. Aug. 20, 2009) (same).

## B.    Right to Representation

The Commissioner argues and the Court agrees that the ALJ's failure to notify Soto adequately of his right to representation at the hearing constitutes legal error further warranting remand. *See* Def. Mem. at 3. Although a Social Security claimant does not have a constitutional right to be represented by counsel during an administrative hearing before an ALJ, *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), he has both a statutory and a regulatory right to receive notice that he may obtain the assistance of counsel or that of a non-attorney representative during the hearing. *Id.* (citing 42 U.S.C. §§ 406(c), 1383(d)(2)(D) and 20 C.F.R. § 404.1706); *see* 20 C.F.R. § 404.1705 (entitling claimant to attorney or non-attorney

representative). The Commissioner must advise the claimant of this right, in writing, in advance of the hearing. 42 U.S.C. §§ 406(c), 1383(d)(2)(D). Furthermore, at the hearing, the ALJ must ensure that the claimant is aware of his right to counsel. *Lamay*, 562 F.3d at 507 (quoting *Robinson v. Sec'y of Health Human Servs.*, 733 F.2d 255, 257 (2d Cir. 1984)); *see also, e.g., Hairston ex rel. S.N. v. Comm'r of Soc. Sec.*, 52 F. Supp. 3d 657, 672 (S.D.N.Y. 2014). "If properly informed of that right, the claimant may waive it." *Martino ex rel. C.P. v. Astrue*, No. 09-CV-6479 (KBF), 2012 WL 1506058, at *9 (S.D.N.Y. Apr. 27, 2012) (citing *Lamay*, 562 F.3d at 507). However, where the ALJ neglects to indicate clearly at the hearing that the claimant has a right to representation, the claimant's waiver is not adequately knowing, willing, and voluntary. *Id.*; *see also, e.g., Collado v. Astrue*, No. 05-CV-3337 (KMK) (LMS), 2009 WL 2778664, at *10 (S.D.N.Y. Aug. 31, 2009).

Here, although Soto received written notices advising him of his right to representation prior to the hearing, R. at 34-41, 42-49, the ALJ did not commence the hearing by asking Soto whether he was aware of his right to representation, whether he wanted additional time to secure representation, or whether he wanted to proceed with the hearing without representation, as the ALJ was required to do under the applicable statutes and regulations. Thus Soto's waiver of his right to representation was not adequately knowing, willing, and voluntary. This legal error does not supply an independent basis to remand; however, "[w]hen such an error augments a separate legal error committed by the ALJ and prejudices the claimant, [ ] the lack of a valid waiver of representation can supply a reason to remand the proceeding." *Collado*, 2009 WL 2778664, at *10; *see also, e.g., Armstrong v. Colvin*, No. 12-CV-8126 (VB), 2013 WL 6246491, at *17 (S.D.N.Y. Dec. 3, 2013) (remand only appropriate where absence of counsel prejudiced claimant); *Martino ex rel. C.P.*, 2012 WL 1506058, at *11 (same). Because the Court concludes

that the ALJ failed to fully develop the administrative record, as discussed above, Soto's invalid waiver of representation was prejudicial, providing further grounds for a remand. *See, e.g., Sheerinzada v. Colvin*, 4 F. Supp. 3d 481, 497 (E.D.N.Y. 2014) ("[I]n the *pro se* context, prejudice is shown where the ALJ neglected to develop properly the administrative record in a manner consistent with the heightened *pro se* standard.") (quoting *Judge v. Astrue*, No. 09-CV-4058 (JS), 2011 WL 1810468, at *3 (E.D.N.Y. May 10, 2011)); *Armstrong*, 2013 WL 6246491, at *17.

### III. CONCLUSION

For the foregoing reasons, I recommend that the Commissioner's motion be granted and Soto's case remanded to the SSA for further administrative proceedings.

Specifically, I recommend that, on remand, the ALJ should:

1. promptly advise Soto of his right to obtain representation and ensure that any waiver of that right be made explicitly at the hearing;

2. further develop the medical record by seeking additional medical evidence from treating sources and, if appropriate, by requesting a consultative medical examination or medical expert testimony.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing

objections must be directed to Judge Daniels.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

If Soto does not have access to cases cited herein that are unreported or available only on a computerized database, he should request copies from counsel for the Commissioner. *See* Local Civil Rule of the Southern and Eastern Districts of New York 7.2; *accord Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009).

Dated: New York, New York
June 8, 2015

JAMES L. COTT
United States Magistrate Judge

**A copy of this Report & Recommendation has been sent by regular mail to:**

Vincent Soto
2670 Bainbridge Avenue
Apt. #2D
Bronx, NY 10458

11